**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL PAVLYIK,

        Petitioner,

    v.

PATRICK NOGAN, et al.,

        Respondents.

Civil Action No. 19-17691 (KMW)

**OPINION**

**WILLIAMS,** District Judge

    This matter comes before the Court on Petitioner Michael Pavlyik's ("Petitioner") petition for writ of habeas corpus ("Petition") brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition (ECF No. 22), to which Petitioner replied (ECF No. 23). For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

## I. BACKGROUND[1]

    In its opinion affirming Petitioner's convictions, the New Jersey Superior Court, Appellate Division provided the following factual summary:

> A jury found [Petitioner] [] guilty of eight crimes involving sexual abuse of his stepdaughter, A.A., and one weapons offense. The abusive conduct commenced in February 2004, when A.A. was eight years old, and continued until February 2007. It occurred in New Jersey on the weekends and during the summer weeks while A.A., who lived with her father in Maryland, was in the care of her mother and stepfather in their New Jersey home. Ordinarily, three

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

other younger children were staying in the home when A.A. visited—one is defendant's child and two are A.A.'s half-siblings.

. . .

A.A., who was fifteen years old when the case was tried in 2011, testified that [Petitioner] started sexually abusing her in 2004, when she was eight years old and continued until 2007, when she was eleven years old. A.A. acknowledged enjoying her time in New Jersey with her family and, for a time, wanting to live there rather than in Maryland. Nevertheless, A.A. testified about what [Petitioner] did to her and caused her to do to him while she was with him.

A.A. described a variety of sexual acts to which [Petitioner] subjected her to over the three-year period: penile penetration of her vagina on one occasion; touching of her breasts; causing her to touch his penis; cunnilingus; and causing her to engage in fellatio.

(ECF No. 22-6, *State v. M.P.*, No. A-2498-11T3 at 1-2 (N.J. Super. Ct. App. Div. March 26, 2014).)

The Gloucester County Grand Jury returned Indictment No. 07-12-01225-I, charging Petitioner with endangering the welfare of a child, N.J.S.A. § 2C:24-4a (count one); aggravated sexual assault, N.J.S.A. § 2C:14-2a(1) (counts two, three, four); sexual assault, N.J.S.A. § 2C:14-2b (counts five, six, seven); showing obscene material to a minor, N.J.S.A § 2C:34-3b(2) (count eight); and possession of a destructive device, N.J.S.A. § 2C:39-3a (count nine). (ECF No. 22-2.)

On April 1, 2011, following a jury trial presided over by the Honorable Walter L. Marshall, J.S.C., Petitioner was convicted on all counts. (*See* ECF Nos. 22-38.) On July 1, 2011, Petitioner was sentenced to a total term of thirty-three years imprisonment, subject to the No Early Release Act ("NERA"). (*See* ECF No. 22-39.)

Petitioner filed a Notice of Appeal with the Appellate Division. (ECF No. 22-4.) On March 26, 2014, the Appellate Division affirmed Petitioner's convictions. (ECF No. 22-6, M.P., No. A-

2

2498-11T3.) On September 22, 2014, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 22-7.)

Petitioner filed a *pro se* post-conviction relief ("PCR") petition raising a multitude of claims. (ECF No. 22-8.) On October 28, 2014, Petitioner filed a pro se supplemental PCR petition. (ECF No. 22-10.) On October 10, 2015, counsel filed a supplemental PCR petition. (ECF No. 22-11.) On September 13, 2016, the PCR court denied Petitioner's PCR petition. (ECF No. 22-13.)

On May 31, 2018, the Appellate Division affirmed the denial of Petitioner's PCR petition. (ECF No. 22-17, *State v. M.P.*, No. A-1593-16T2 (N.J. Super. Ct. App. Div. May 31, 2018).) On December 6, 2018, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. M.P.*, 236 N.J. 116, 198 A.3d 293 (Table) (2018).

On September 11, 2019, Petitioner filed the instant habeas petition ("Petition") and supporting brief with this Court. (ECF Nos. 1, 1-2.) Thereafter, Respondents filed a response. (ECF No. 22.) Petitioner filed a reply. (ECF No. 23.) On January 24, 2023, this Court issued a Memorandum Opinion finding the Petition was mixed—i.e., it contained both exhausted and unexhausted claims. (ECF No. 25.) This Court provided Petitioner with the opportunity to either (i) withdraw his unexhausted claims and have the Court rule on his remaining claims; or (2) request a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), or to return to state court to exhaust his unexhausted claims. (*Id.*) On February 8, 2023, Petitioner elected to withdraw his unexhausted claims: Ground One, Ground Two, subclaims b, d, e, f, i, j, k, l, n, and o, and Ground Three, subclaims a, d, and e. (ECF No. 27.) Petitioner's remaining habeas claims are as follows:

> 2. Ineffective assistance of trial counsel for failing to investigate witnesses and adequately cross examine A.A..
>
> > a. Trial counsel failed to investigate Robert Andrews.
> > c. Trial counsel failed to investigate Tina Raspe.
> > g. Trial counsel failed to investigate Regina Howard.

h. Trial counsel failed to investigate Jean Willemain.
m. Trial counsel failed to investigate Mildred Quiles.

3. Ineffective assistance of trial counsel for failing to investigate potential expert witnesses.

b. Trial counsel failed to investigate potential medical experts.
c. Trial counsel failed to investigate potential explosive experts.

4. Ineffective assistance of trial counsel for failing to investigate legal theories applicable to the defense.

a. Trial counsel failed to conduct adequate legal research which could have been resorted to for the exclusion of the fresh complaint evidence of C.D. admitted as hearsay.
b. Trial counsel failed to object to the unconstitutional admission of the victim's fresh complaint evidence.
c. Trial counsel failed to investigate the admission of material designated as confidential.
d. Trial counsel failed to investigate the requirements to sustain a conviction for possession of a destructive device.
e. Trial counsel failed to investigate inconsistent statements for impeachment.
f. Trial counsel failed to object to hearsay lab testimony.

5. Petitioner was denied due process by failure of the PCR court to conduct an evidentiary hearing with factual and expert witnesses who could have offered exculpatory evidence demonstrating trial counsel was ineffective.

(*See generally* ECF Nos. 1, 1-2.)

## II. STANDARDS OF REVIEW

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas

4

petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

**B. Ineffective Assistance of Counsel Standard**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. Ground Two: Failure to Investigate Fact Witnesses and Cross Examine A.A.[2]

Petitioner's second ground for relief alleges that trial counsel was ineffective failing to call "a host of possible factual non-expert witnesses" who may have had the "potential for presenting exculpatory evidence, which could have resulted in acquittal." (ECF No. 1-2 at 84.) Petitioner alleges the "record contains nothing to demonstrate trial counsel investigated 15 possible germane factual witness." (*Id.*) Relevant here, Petitioner alleges trial counsel should have investigated "Robert Andrews, . . .,Tina Raspe, . . . , Regina Howard, Joan Willemain, . . ., [and] Mildred Quiles." (*Id.*) Petitioner also argues that trial counsel failed to adequately cross-examine the victim on inconsistent statements between her pre-trial statement and her trial testimony. (*Id.* at 90-91.) Finally, Petitioner argues that PCR counsel was also ineffective for failing to interview these witnesses. (*Id.* at 89.)

---

[2] The Court will only be addressing the grounds for relief that have not been withdrawn by Petitioner.

Petitioner submits that Robert Andrews was the biological father of A.A. and was "the source of a prior allegation of abuse by Petitioner found to be unsubstantiated and alleged to have occurred on February 17, 2004." (*Id.*) Petitioner claims that Andrews was involved in a custody dispute with A.A.'s mother and during the custody hearing, testimony was given regarding Andrew's abuse of his ex-girlfriend, Tina Raspe. (*Id.*) Petitioner also alleges that Andrews testified at the custody hearing that he permitted visits to resume between Petitioner and A.A., even though he believed Petitioner was abusing A.A., because "of the attorney fees involved in contesting [it]." (*Id.*) Petitioner alleges that trial counsel should have been alerted that the custody dispute may have been a possible reason for the allegations against Petitioner. (*Id.*)

Petitioner submits that Regina Howard "was a therapist who had met with [A.A.] on March 6, 2007," and that she spoke with and sent documents to the Department of Social Services. (*Id.* at 86.) Petitioner claims that Joan Willemain was with the Maryland Department of Social Services and interviewed A.A. (*Id.*) According to Petitioner, on May 12, 2007, Willemain recommended the matter be closed with a referral for counseling. (*Id.* at 87.) Finally, Petitioner claims that Mildred Quiles was a licensed clinical social worker who investigated and found a prior incident of alleged abuse as to A.A. unsubstantiated. (*Id.* at 88.)

On collateral appeal the Appellate Division provided the following background:

> The law firm that represented [Petitioner] assigned the matter to an attorney who was a new hire, and became responsible for the file three months before the scheduled trial date. Thus, it is unsurprising that the heart of [Petitioner's] PCR petition is the claim that his attorney's services were ineffective and prejudiced his right to a fair trial.
>
> . . .
>
> Before [Petitioner] rested, defense counsel mentioned on the record, but outside the presence of the jury, he might be calling an additional possible witness, a DCPP employee. Allegedly, the worker signed a

letter on August 8, 2008, stating that after investigation of a June 3, 2008 referral, DCPP determined the allegation was unfounded. During the discussion with the judge, counsel acknowledged that the indictment preceded the letter by approximately a year. He said he nonetheless had a duty to attempt to locate the worker and interview her. The assistant prosecutor responded that A.A. had told another friend about the sexual abuse. The friend told her mother, who relayed it to DCPP. According to the prosecutor, the disclosure related to the subject matter of the trial, and therefore the Division decided to take no further action. Defense counsel attempted to locate the worker, and the judge gave him time to do so, albeit expressing some skepticism about the admissibility and relevance of the letter. When the trial resumed the following day, counsel did not mention the letter again.

(ECF No. 22-17 at 4-7, *M.P.*, No. A-1593-16T2.) The Appellate Division denied Petitioner's claim that trial counsel was ineffective for failing to investigate potential witnesses and adequately cross examine A.A. as follows:

Evidentiary hearings on ineffective assistance of counsel claims are only granted when a defendant presents prima facie evidence in support of PCR. *See State v. Precise*, 129 N.J. 451, 462-63 (1992). As set forth in *State v. Cummings*, and reiterated in the cases that follow:

[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance. Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.

[321 N.J. Super. 154, 170 (App. Div. 1999) (citation omitted).]

[Petitioner's] arguments are not supported by any certifications regarding facts allegedly overlooked by trial counsel that would have affected the outcome of the case. Therefore, no further comment is necessary on the counseled brief's argument that trial

counsel's failure to meet with [Petitioner] or interview the DCPP worker prejudiced the outcome.

Under *Strickland v. Washington*, a defendant must identify acts or omissions allegedly showing unreasonable professional judgment by an attorney and then establish that such acts and omissions had a prejudicial effect on the outcome. 466 U.S. 668, 687 (1984). Even if we were to agree that trial counsel should have done more, which we do not, we cannot agree that the failure to do so had any effect on the outcome.

[Petitioner] provides no information whatsoever, other than his own bald assertions, as to the nature of that information or how it would have altered the outcome. [Petitioner's] uncounseled brief attacks counsel's alleged failure to "investigate" or, presumably, to adequately explore on cross-examination, A.A.'s prior inconsistent statements. Had the cross-examination been more expansive, [Petitioner's] suggested areas of cross-examination would not have affected the verdict. That A.A. may have said the sexual attacks occurred in one room as opposed to another, or that family members were outside, or that she sent him affectionate e-mails, were all explored during the trial. The jury heard the testimony and apparently did not consider it important.

. . .

[Petitioner] has not established ineffective assistance or any prejudice. The State's proofs were indeed overwhelming.

(*Id.* at 11-13, *M.P.*, No. A-1593-16T2.)

Under federal law, a failure to investigate potentially exculpatory evidence or witnesses may form the basis of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained . . . and whether such information, assuming admissibility in court, would have produced a different result." *See Brown*, 2016 WL 1732377, at *5 (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)). The petitioner must also

still demonstrate he suffered prejudice. *See Strickland*, 466 U.S. at 690-91. But, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel and does not present sworn testimony from that witness, a petitioner will not be able to establish the prejudice prong of *Strickland*. *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)).

Here, Petitioner makes conclusory arguments regarding the potential witnesses and what information they may have provided. Petitioner has not provided any sworn testimony, affidavits, or certifications from any of these witnesses. Petitioner does not even submit that these witnesses would have testified on his behalf. At most, Petitioner speculates that A.A. may have made the allegations against Petitioner based on a custody dispute between Robert Andrews and her mother, Tina Raspe may have testified that Robert Andrews was abusive, Regina Howard may have testified that she interviewed A.A., Joan Willemain may have testified that she referred A.A. for counseling after recommending "the matter" be closed, and Mildred Quiles may have testified that a prior incident of alleged abuse at to A.A. was unsubstantiated. (*See* ECF No. 1-2 at 84-88.) Petitioner's mere speculation regarding the potential witnesses' testimony is insufficient to establish prejudice. *See Duncan*, 256 F.3d at 201-02. Petitioner has also failed to make any argument as to how any potential information from these witnesses would have produced a different result at Petitioner's trial. *See Brown*, 2016 WL 1732377, at *5.

The Appellate Division found that Petitioner failed to show prejudice and that the State's proofs were indeed overwhelming. The Appellate Division also noted that the jury heard A.A.'s testimony at trial and Petitioner failed to show how any further cross-examination of her would have changed the outcome of his case. (ECF No. 22-17 at 12, *M.P.*, No. A-1593-16T2.) On direct appeal the Appellate Division summarized the State's proofs as follows:

12

It is an understatement to say that the State's evidence adequately supports the verdict. A.A., who was fifteen years old when the case was tried in 2011, testified that [Petitioner] started sexually abusing her in 2004, when she was eight years old and continued until 2007, when she was eleven years old. A.A. acknowledged enjoying her time in New Jersey with her family and, for a time, wanting to live there rather than in Maryland. Nevertheless, A.A. testified about what [Petitioner] did to her and caused her to do to him while she was with him.

A.A. described a variety of sexual acts to which [Petitioner] subjected her to over the three-year period: penile penetration of her vagina on one occasion; touching of her breasts; causing her to touch his penis; cunnilingus; and causing her to engage in fellatio.

With respect to "oral sex," A.A. testified that [Petitioner] used a purple, rubber toy he took from under his and her mother's bed and directed her to suck it. Sometimes he substituted his penis for the toy. In addition, she said that [Petitioner] licked her vagina, "usually either before or after" she "gave him oral sex."

A.A. also described the prelude to the only act of intercourse she acknowledged at trial. [Petitioner] showed her a video that depicted "a regular teenager, a girl, and her father . . . having sex in the back of a van." After A.A. looked at the video on the living room computer as defendant directed, he asked her if "she wanted to try it," took her to the couch, pulled down her pants and "stuck his penis in [her] vagina."

A.A.'s last visit to New Jersey was on the weekend before March 6, 2007, which was the day A.A. first disclosed [Petitioner's] abuse to an adult. A.A. made the disclosure in Maryland to Detective Chrystal Hassler (then known as Detective Chrystal Young) and a Maryland social worker, Joan Willemain.

As A.A. explained at trial, she did not go to the detective's office on her own. She went to answer the detective's questions "about something [she] and [her friend C.D.] had did [sic]" in Maryland. The detective's questions "led to something else, and come to find out that I had let out that my step-dad was sexually abusing me, and they stopped me from going there."

An audio recording of A.A.'s March 2007 interview with Detective Hassler and Willemain was played for the jury at trial. A.A's descriptions of [Petitioner's] conduct during that interview were generally consistent with, but not identical to, her trial testimony,

For example, during the interview, A.A. described the purple toy [Petitioner] used to teach her before tricking her by putting his penis in her mouth. She also described [Petitioner] making her watch videos on the computer in the living room that showed teenagers doing the things defendant "tr[ied] to do to [her]."

Other than differences in the terminology A.A. used when she was interviewed at age eleven and testified at trial at age fifteen, the most notable differences between her accounts were: her descriptions of cunnilingus, which A.A. disclosed at trial but not during the interview; and her description of penile penetration of her vagina, which she told Hassler and Willemain occurred about "five or four" times in [Petitioner's] bedroom but told the jury occurred only once in the living room.

Evidence tending to corroborate A.A.'s testimony was retrieved during a search of the New Jersey home [Petitioner's] shared with A.A.'s mother, two children born of their relationship, and [Petitioner's] son born of another relationship, who is a year younger than A.A. That search was conducted shortly after A.A.'s interview. A purple dildo, along with other sexual devices and a device for cleaning them, was found in a bag under the bed used by [Petitioner] and A.A.'s mother. A substance retrieved from the purple device was subjected to DNA testing and determined to be saliva of a female, but it was not A.A.'s saliva.

Videos stored on the computer in the living room in the home of A.A's mother and [Petitioner] were also found and seized. One of the videos, which was four minutes and nine seconds long, graphically depicts actual anal and vaginal intercourse between a mature adult male and a teenage girl. The conduct takes place in the back of a vehicle that appears to be either a station wagon or SUV with a hatchback that is up and open to expose the flat surface of the interior. That video was played for the jurors.

The young woman in the video is wearing shorts, her hair is in pigtails tied with bows, and she repeatedly addresses the older male as "daddy." That was the only video shown to the jurors, But the officer who recovered that video from the computer in the living room of [Petitioner's] home selected and retrieved others, and he testified briefly about their various titles and content.

The State also presented expert testimony tending to corroborate vaginal penetration. In March 2007, Dr. Wendy Lane, who was qualified at trial as an expert in pediatric medicine with a specialty in pediatric abuse, examined A.A. and found damage to the eleven-

year old's hymenal tissue. In Dr. Lane's opinion, the damage was caused by penetrating trauma, not blunt trauma such as one from a fall on gymnastics equipment or a bicycle. Dr. Lane also ruled out A.A.'s use of a tampon or self-exploration as possible, but very unlikely, causes of the well-healed transaction she observed.

The doctor acknowledged she could not identify the source of A.A's penetrating trauma with absolute certainty. Nevertheless, based on A.A.'s history, which included the child's denial of consensual sexual conduct and no history of other penetrating trauma, Dr. Lane opined, within a reasonable degree of medical probability, that the penile intercourse with [Petitioner] was the cause.

Finally, the State presented evidence that A.A. had confided in other children while the abuse was ongoing. At trial and during her interview with Hassler and Willemain, A.A. said she told [Petitioner's] son that [Petitioner] was hurting her and told her friend C.D. about the sexual abuse.

[Petitioner's] son testified for the defense. He denied being told about A.A.'s being hurt. G.D. testified for the State at trial and told the jurors what A.A. said.

G.D. lived in Maryland. And, by both A.A.'s and C.D.'s accounts, they were best friends when A.A. confided in her. According to G.D., while they were sharing secrets, A.A., who seemed upset but did not cry, told her that her stepfather "touched . . . and licked her in her vaginal area and did it with her," meaning to G.D. that "he had sexual intercourse with her." G.D. explained that she did not tell anyone because A.A. asked her not to.

During her March 2007 interview, A.A. said: "I told [G.D.] what my step-dad had done to me because she was, she was kinda the only person I could tell at the time." At trial A.A. volunteered additional information. When the prosecutor asked what she told G.D., A.A. said: "My step-dad started sexually abusing me and it was basically like a teacher and student kind of thing. And when me and [G.D. got to] know each other more, I soon told her about it and then we started experimenting with each other." Moments later, A.A. repeated her statement linking her telling C.D. about [Petitioner's] abuse and the two girls' "experimenting."

(ECF No. 22-6 at 3-5, *M.P.*, No. A-2498-11T3.)

Petitioner makes only conclusory arguments regarding who these potential witnesses were and how they were involved in this matter. He fails to provide any evidence regarding what they would have testified to. Additionally, Petitioner fails to explain how their testimony could have changed the outcome of his case. Additionally, as explained above, the jury listened to a recording of A.A.'s statement to detectives and listened to her trial testimony. Petitioner fails to argue how trial counsel further cross examining A.A. would have affected the jury's verdict. The Appellate Division applied the standard in *Strickland* and found Petitioner failed to meet the prejudice prong. Petitioner cannot demonstrate the state court's adjudication was an unreasonable application of clearly established federal law. Thus, Petitioner's claim is denied.[3]

### B. Ground Three: Failure to Investigate Expert Witness

In ground three, Petitioner alleges that trial counsel was ineffective failing to investigate potential medical experts and a potential explosives expert. (ECF No. 1-2 at 95-99.) Regarding medical experts, Petitioner argues that trial counsel should have obtained an expert to dispute the State's medical expert's opinion that penile intercourse with Petitioner was the cause of the damages to A.A.'s hymenal tissue. Petitioner submits that an expert could have testified that the experimentation between A.A. and C.D. could have caused the damage. (*Id.* at 96.) Petitioner also

---

[3] Petitioner also raises this claim against PCR counsel, arguing that PCR counsel was ineffective for failing to investigate witnesses. This claim is not cognizable on habeas review, as there is no federal constitutional right to counsel in PCR proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Skelton v. Gilmore*, No. 19-2028, 2020 WL 5231572, at *1 (E.D. Pa. Sept. 2, 2020) ("To the extent that the petitioner is attempting to obtain habeas relief simply based on an allegation that his state post-conviction relief counsel was ineffective, such a claim is meritless and cannot be a basis for habeas relief."); *Kelly v. Johnson*, No. 16-2553, 2020 WL 3097510, at *17 (D.N.J. June 11, 2020) ("Petitioner also contends that PCR counsel was ineffective for failing to adequately argue the ineffective assistance of trial counsel claim. Specifically, he argues that counsel's failure to obtain and submit affidavits from witnesses . . . to the PCR Court undermined the likelihood of success on those claims . . . . The Court will deny this ground because it is not cognizable as an independent ground for habeas relief."); *Boone v. Gilmore*, No. 15-2733, 2017 WL 6497295, at *3 (E.D. Pa. Dec. 19, 2017) ("To the extent that Petitioner intended to pursue a standalone claim that PCRA counsel was ineffective for failing to present Mr. Davis's affidavit to the PCRA court, that claim is non-cognizable."). Accordingly, habeas relief is also denied as to the portion of this claim against PCR counsel.

argues that an expert could have testified that it was improper for the emergency room doctor who treated A.A. to decide not to examine A.A. because she was upset and that A.A. "should have been examined immediately regardless of psychological condition." (*Id.*) Regarding an explosive expert, Petitioner argues that trial counsel should have investigated procuring George W. Chin as an expert, as he was the New Jersey state police forensic scientist who authored a report on the explosive device seized from Petitioner's residence.[4] Petitioner claims that the State's explosives expert's testimony relied on the report Chin authored, and trial counsel should have determined "whether [Chin's] opinion would contradict trial evidence of a detective who did not conduct testing." (*Id.* at 98.) Finally, Petitioner argues that PCR counsel was also ineffective for failing to investigate medical and explosive experts. (*See id.* at 96-98.)

On collateral appeal, Petitioner raised these claims in a conclusory fashion in his *pro se* supplemental PCR petition, which listed ninety statements and claims. (*See* ECF No. 22-10.) There, Petitioner argued "ineffective assistant of counsel for failing to hire an explosives expert to counter the state" and "ineffective assistance of counsel for failing to hire a medical expert to counter the state." (*Id.* at 3.) The PCR court noted that "Petitioner added an additional ninety [] claims or statements about how counsel was deficient[, and] [m]any of these claims are meritless or statutorily barred, and many of the statements are baseless or irrelevant." (ECF No. 22-13 at 14.) The PCR court explained that for the claims that were not, "the relevant 'inquiry is whether counsel's performance was 'reasonable considering all the circumstance.'" (*Id., citing State v. Savage*, 120

---

[4] By way of background, on direct appeal, the Appellate Division summarized the evidence regarding the explosive device as follows:

> The State also presented evidence to establish defendant's possession of a destructive device. It was found during the search of defendant's room in March 2007. The device consisted of a fused, five-inch cardboard cylinder holding an explosive mixture containing black powder. A detective from the arson and bomb squad unit of the New Jersey State Police testified that if the fuse was ignited the device would explode and propel anything in the area outward in all directions.

(ECF No. 22-6 at 5, *M.P.*, No. A-2498-11T3.)

N.J. 594, 617 (1990) (quoting *Strickland, supra*, 466 U.S. at 688.)) The court noted that "many of the additional number of claims Petitioner makes about how trial counsel was deficient are merely bald assertions." (*Id.* at 15.) The PCR court concluded that there was no "factual evidence to suggest that the Petitioner had a reasonable probability that the proceeding result would have been different but for counsel's errors." (*Id.*) Therefore, the court found Petitioner failed to meet the second prong of *Strickland*. (*Id.*)

The state court's holding that Petitioner failed to show prejudice required by *Strickland* was neither contrary to nor an unreasonable application of federal law. It is axiomatic that a petitioner's "failure to include a sworn statement regarding the nature of [an expert's] proposed testimony is fatal to his making a prima facie showing of prejudice" as to the failure to call such an expert at trial. *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan*, 256 F.3d at 201-02. Regarding Petitioner's claims that trial counsel was ineffective for failing to call medical experts, Petitioner has identified no expert who was willing to provide testimony in support of his claims, he has failed to show any prejudice flowing from counsel's alleged failure to call such witnesses, and these claims therefore fail to set forth a valid basis for habeas relief. Although Petitioner does identify George W. Chin as the explosive device expert trial counsel should have procured to testify, Petitioner fails to argue what Chin would have testified to, provide an affidavit to what he would have testified to, or how the lack of said testimony prejudiced Petitioner. As Petitioner notes, Chin was the New Jersey state police forensic scientist who authored a report on the explosive device seized from Petitioner's residence and in that report, he found the item was a "low explosive." (ECF No. 22-25 at 2.) Petitioner fails to show the outcome of his trial would have been different if counsel had called Chin as an expert to testify to his finding that the

device was an explosive. *Strickland*, 466 U.S. at 686-88, 693-94. Therefore, Petitioner fails to show he is entitled to habeas relief on this claim.[5]

### C. Ground Four: Failure to Investigate Legal Theories

Petitioner raises several subclaims under ground four. The Court will address each claim in turn.

### 1. Failure to Object to Fresh Complaint Hearsay

In ground four, subclaims a and b, Petitioner argues that trial counsel was ineffective for failing to adequately object to or research an objection to the hearsay "fresh complaint" evidence of A.A.'s report of the abuse to C.D. that was introduced at trial. (ECF No. 1-2 at 105-112.) Petitioner appears to argue that the statement A.A. made to C.D. should not have qualified as a fresh complaint due to the time between the abuse and A.A. reporting it to C.D. (*See id.*) Petitioner argues that if trial counsel had researched the issue, counsel would have been able to utilize this argument. (*Id.* at 108.)

Petitioner raised the instant claim in his ninety claim *pro se* supplemental PCR petition. (ECF No. 22-10 at 3.) The Appellate Division denied this claim and found that "despite [Petitioner's] allegations to the contrary, counsel did object to the testimony of the fresh complaint witness." (ECF No. 22-17 at 10, *M.P.*, No. A-1593-16T2.)

By way of background, on direct appeal, the Appellate Division explained that C.D. testified for the State at trial and told the jury what A.A. said. (ECF No. 22-6 at 5, *M.P.*, No. A-2498-11T3.) The Appellate Division noted that following a pretrial hearing, the trial court determined C.D.'s

---

[5] As noted above, Petitioner argues that PCR counsel was also ineffective for failing to investigate medical and explosive experts. This claim is not cognizable on habeas review, as there is no federal constitutional right to counsel in PCR proceedings. *See Coleman*, 501 U.S. at 752; 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") Accordingly, this claim is also denied as to any argument for habeas relief regarding PCR counsel.

testimony about what A.A. told her was sufficiently trustworthy to be admitted at trial. (*Id.* at 5, fn. 3.) During the pretrial motion hearing, trial counsel objected to the admission of the statement under N.J.R.E. 803(c)(27), arguing that the events had taken place years prior and that went to the trustworthiness of the statement. (*See* ECF No. 22-34 at 34:1-21.) Petitioner appears to argue that trial counsel should have objected based on the length of time between the abuse and A.A.'s report to C.D. because based on the length of time the statement did not qualify as an "excited utterance" under N.J.R.E. 803(c)(2). However, the trial court admitted the statement under N.J.R.E. 803(c)(27), not as an excited utterance under N.J.R.E. 803(c)(2). (*Id.* at 36:3-6.) Petitioner fails to show that the Appellate Division's finding that trial counsel did object to the admission of this evidence and was therefore not ineffective was contrary to or any unreasonable application of clearly established federal law or that the denial was based on an unreasonable determination of the facts. For these reasons, Petitioner is not entitled to habeas relief on this claim.

### 2. Failure to Investigate Confidential Information from Witnesses

In ground four, subclaim three, Petitioner argues that trial counsel was ineffective for failing to investigate whether confidential information from individuals named in ground two of the instant petition could have been used to impeach the victim. (ECF No. 1-2 at 112-118.) Petitioner admits that "most of the witnesses alluded to within ground two may have had some privilege to exercise as counselors, therapists, psychologists, or psychiatrists." (*Id.* at 113.) However, Petitioner argues that following A.A.'s testimony, counsel should have "requested all reports generated by the persons invoking any claims of privilege . . . [a]dditionally he should have subpoenaed all of them and requested each provide a verbal summary of what [A.A.] had revealed to them regarding any alleged attacks by Petitioner if no written reports existed." (*Id.* at 114.) Petitioner claims the

contradictions in A.A.'s testimony and prior reports should have alerted counsel to the need for this confidential information. (*Id.* at 114.)

This claim for habeas relief, reiterates the arguments already made in ground two above. Although Petitioner now argues that trial counsel should have further investigated potential confidential information, in ground two Petitioner argued that counsel should have further investigated these potential witnesses and what testimony they could potentially offer. As noted above, Petitioner withdrew his claims related to majority of the witnesses originally named in ground two. (*See* ECF No. 27.) As ground four essentially repeats the arguments raised in ground two, the Court finds those claims withdrawn as to ground four also. Additionally, Petitioner again makes conclusory arguments regarding any potential witness. Petitioner argues that trial counsel should have asked the Court to determine if "any such disclosures normally held to be confidential were at odds with [A.A.'s] version." Petitioner also makes the conclusory accusation that had counsel investigated witnesses "it would have been clear that [A.A.'s] statements to them . . . and the disclosures to law enforcement and medical personnel and the fresh complaint witness were all contradictory." (*Id.* at 114.) Petitioner fails to provide any evidence to support these arguments. His bald assertions do not provide a basis for habeas relief. *See Palmer v. Hendrick*s, 592 F.3d 386, 395 (3d Cir. 2010) ("bald assertions and conclusory allegations" cannot establish an ineffective assistance of counsel claim); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991) (finding that the defendant could not "meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense.")

As explained at length in ground two, the Appellate Division noted that the State's proofs against Petitioner were overwhelming and found that Petitioner failed to show the prejudice

necessary to prove trial counsel was ineffective for failing to do any further investigation into potential witnesses. Accordingly, the state courts' rejection of Petitioner's failure-to-investigate claim was not contrary to or an unreasonable application of *Strickland* and its progeny, nor was it based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim will be denied.

### 3. Failure to Clarify the Elements for Possession of a Destructive Device

In ground four, subclaim four, Petitioner claims that the requirements for a conviction for possession of a destructive device were not complied with because trial counsel "failed to investigate . . . the proofs required to convict as to this offense." (ECF No. 1-2 at 119.) Petitioner argues that N.J.S.A. 27:2-3 defines "dangerous fireworks" as "fireworks in excess of five inches in length" and the device found in his residence was noted to be only five inches in length. (*Id.*)

Petitioner raised this claim in a conclusory fashion in his ninety-claim *pro se* supplemental brief on collateral appeal. (ECF No. 22-10 at 3.) The PCR court dismissed the claims in Petitioner's *pro se* supplemental brief finding that the claims were all either "meritless or statutorily barred." (ECF No. 22-13 at 14.) The PCR court found that there was no factual evidence to suggest that Petitioner had a reasonable probability that the proceeding result would have been different but for counsel's errors. (*Id.* at 15.)

Petitioner's claim is meritless. The State charged Petitioner with third-degree possession of a prohibited destructive device, contrary to N.J.S.A. § 2C:39-3a, which makes it a crime to knowingly possess any destructive device. In pertinent part, "destructive device" is defined as "any device, instrument or object designed to explode or produce uncontrolled combustion, including . . . . any explosive . . ." N.J.S.A. 2C:39-1(c). Petitioner was not charged with illegal possession of a firework, a disorderly persons offense under N.J.S.A. 21:3-8, which would have pertained to the

definition of "dangerous firework" found in N.J.S.A. 27:2-3 that Petitioner presents here. As Petitioner was not charged with the possession of fireworks, trial counsel cannot be found ineffective for failing to argue that the proofs of Petitioner's case did not meet the definition of fireworks. Trial counsel cannot be found ineffective for failing to raise a meritless claim. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Thus, Petitioner is not entitled to habeas relief as to this claim.

### 4. Failure to Investigate Inconsistent Statements for Impeachment

Ground four, subclaim five, reiterates the arguments made by Petitioner in the above discussed ground two and ground four, subclaim three. (*See* ECF No. 1-2 at 119-120.) Petitioner argues again that trial counsel was ineffective for failing to adequately conduct investigations into inconsistencies in A.A.'s statements and "possible exculpatory witnesses." (*Id.* at 119.) This claim is denied for the reasons explained by the Court in ground two and ground four, subclaim three.

### 5. Failure to Object to Hearsay

In ground four, subclaim six, Petitioner argues that trial counsel was ineffective for failing to object to hearsay presented by State witness Alexander Perry regarding the destructive device. (ECF No. 1-2 at 121.) Alexander Perry testified at Petitioner's trial that he was the detective who dismantled the destructive device at Petitioner's residence and sent the components to the lab for testing. (ECF No. 22-35 at 49:7-20, 53:20-23.) Detective Perry then testified that the lab results indicated the powder from the device was "36 grams of explosive mixture, containing black powder." (*Id.* at 54:2-7.) George Chin authored the lab report indicating that the destructive device contained "black powder, a low explosive." (ECF No. 22-25.) Chin did not testify at Petitioner's trial. Petitioner argues that trial counsel was ineffective for failing to object to Detective Perry's

hearsay testimony regarding George Chin's laboratory findings that the device contained explosive powder.

Petitioner raised this claim on collateral appeal and the state court denied the claim reasoning as follows:

> In pertinent part, Petitioner argues that defense counsel failed to object to hearsay testimony regarding the lab results of the alleged explosive device. The fact that hearsay testimony was admitted at trial was raised on appeal, but since defense counsel failed to object to the results, the court rejected the issue on appeal.
>
> The Petitioner correctly notes that the Appellate Court agreed that he had the right to confront the witness. Because the Petitioner has a right to confront the witness, he argues defense counsel should have objected. When counsel fails to object, review on appeal is for plain error and reversal is appropriate only if the error is "clearly capable of producing an unjust result." R. 2:10-2; *State v. Rose*, 206 N.J. 141, 157 (2011). By rejecting the Petitioner's claim, the Appellate Court did not find the admission of hearsay evidence as clearly capable of producing an unjust result.
>
> Under the aforementioned *Strickland* test, Petitioner must show counsel's performance was deficient and that there would be a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different. In the Defense's reply brief, Defense argues "[t]he record combined with the Appellate Division's decision demonstrate that had trial counsel actually objected to the detective's testimony, the objection would have been sustained at the very least on appeal." (Reply Brief, 2). However, Petitioner has failed to establish a prima facie case of ineffective assistance of counsel.
>
> There is a strong presumption that counsel has rendered adequate assistance and made significant decisions of reasonable professional judgment. Failing to object does not automatically render counsel's performance deficient. The Petitioner must allege specific facts or omissions to succeed on the first prong. The Petitioner alleges that by allowing the evidence in, the State was allowed to establish one of the elements without the proper investigation or confrontation. Further, the Defense alleges "a timely objection by trial counsel would have led to a reasonable probability of success on that charge at the time of trial." (Reply Brief, 3). The Petitioner must do more than make bald assertions. The errors made my counsel must be so

> serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. As such, Petitioner has failed to show specific facts, and succeed on the first prong. However, assuming arguendo the Petitioner establishes the first prong, he cannot show that the proceeding would have been different as the Appellate Court already found that the admission of hearsay evidence did not produce an unjust result. According to the second prong, the stated deficiency must have impacted the outcome of the proceeding and must be "so serious as to deprive the defendant of a fair trial." *Washington*, 466 U.S. at 690. The Appellate Court already ruled that it did not.

(ECF No. 22-13 at 8-9.)

The state court's decision was not an unreasonable application of clearly established federal law. Petitioner argues that counsel's deficient performance violated his rights under the Confrontation Clause of the Sixth Amendment, which is applicable to the States through the Fourteenth Amendment. *Tennessee v. Lane*, 541 U.S. 509, 523 (2004). The Confrontation Clause guarantees a criminal defendant the right to confront "the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). The Confrontation Clause often arises "when a witness refers to specific information from a non-testifying third party." *Turner v. Warden*, No. 18-17384, 2022 WL 951309, at *8 (D.N.J. Mar. 30, 2022). The right to confrontation, however, may "be waived, including by [a] failure to object to the offending evidence." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.3 (2009).

Assuming arguendo that trial counsel's performance was deficient in failing to object the Detective Perry's hearsay testimony about George Chin's report finding that the powder from the device was an explosive powder, containing black powder, the Court finds Petitioner fails to demonstrate *Strickland* prejudice. Petitioner fails to show if trial counsel had objected and Petitioner

was provided with the opportunity to cross-examine George Chin, how that cross-examination would have persuaded the jury to arrive at a different conclusion. The state court reasonably applied *Strickland* in concluding that Petitioner failed to show how any deficiency by trial counsel impacted the outcome of his case. Accordingly, Petitioner is not entitled to habeas relief on ground four, subclaim six.

### D. Ground Five: Failure to Hold an Evidentiary Hearing

Petitioner's fifth ground for habeas relief, alleges that PCR court violated his due process rights in failing to hold an evidentiary hearing. (ECF No. 1-2 at 122-130.) Petitioner also argues that this Court must hold an evidentiary hearing. (*See id.*)

First, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. Habeas petitioners are not entitled to relief based upon any alleged deficiencies in state PCR proceedings because purported errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation . . . . Federal habeas power is limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment"; what occurs in state collateral review proceedings "does not enter into the habeas calculation").

Thus, the PCR evidentiary hearing claim does not raise a claim that is cognizable in a federal habeas proceeding. Even if errors in Petitioner's state PCR proceedings are presumed to have been present, they are irrelevant to the instant habeas matter because they were collateral to Petitioner's

conviction and sentence and thus cannot give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954. See also 28 U.S.C. § 2254(i).

Second, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (internal citation omitted). "A district court is required to hold an evidentiary hearing only when the petitioner presents a prima facie showing that 'a new hearing would have the potential to advance the petitioner's claim.'" *Porter v. Adm'r of New Jersey State Prison*, No. 20-2048, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021) (quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)). To evaluate whether this standard has been met, this Court must first determine whether the Appellate Division, as the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). In the absence of such a finding, the inquiry ends, and Petitioner has not satisfied the § 2254(d) standard. If the Court finds the state court decision was contrary to or an unreasonable application of federal law or was based on an unreasonable determination of the facts, it must then determine whether a hearing could allow Petitioner to prove his allegations.

Upon review of the parties' papers and other relevant materials, the Court finds that the state court reasonably applied *Strickland* to Petitioner's claims. Accordingly, the Court will deny habeas relief without an evidentiary hearing.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of the denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. Therefore, this Court denies Petitioner a certificate of appealability.

## V. CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED,** and Petitioner is **DENIED** a certificate of appealability. Petitioner's request for an evidentiary hearing is **DENIED.** An Order consistent with this opinion shall be entered.

Dated:        January 23, 2024

**Hon. Karen M. Williams,**
**United States District Judge**